IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RECEIVED
APR 28 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JENNIFER A. REED | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) C.A. No.:  05 - 250 |
| | ) |
| J. P. MORGAN CHASE, INC. | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

1. This action arises to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment and to remedy retaliation against an employee for activity protected under provisions of Title VII of the Acts of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII").

2. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. Venue lies in this judicial district since all acts alleged herein occurred within the District of Delaware at J.P. Morgan Chase, Inc.'s office in Newark, Delaware.

## PARTIES

4. Plaintiff, Jennifer A. Reed, is a female citizen of the United States and currently resides at 105 Cedar Avenue, Newark, New Castle County, Delaware.

5. Defendant, J.P. Morgan Chase Inc., has assets of approximately $1.1 trillion and operations in more than 50 countries. The firm is a leader in investment banking, financial services for consumers and businesses, financial transaction processing, asset and wealth management and private equity. The headquarters for J.P. Morgan Chase, Inc. is located in New

York.

6. At all times relevant hereto, Defendant, J.P. Morgan Chase, Inc. has been an employer as defined in § 701(b)(g)(h) of the Civil Rights Act, 42 U.S.C. § 2000(b)(g)(h), in that Defendant's operations effect commerce and Defendant has employed at least fifteen (15) persons.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff began her employment with J.P. Morgan Chase, Inc. on August 12, 1998 as a Collections Representative. She was paid approximately $40,000 per annum on a bi-weekly basis. She also received full health benefits, stock options, and a pension plan valued along with her income at approximately $54,000 at the time of her termination.

8. Plaintiff was employed by J.P. Morgan Chase, Inc. for four years and eight months until her retaliatory termination on May 6, 2003. During her time of employment, Plaintiff earned awards, raises, and consistently received positive reviews.

9. In November 2002, Nazih Kazzaz, an assistant supervisor, begin committing a pattern of subjecting Plaintiff to repeated sexual harassment including unwelcome and offensive comments, gestures and physical contact of a sexual nature.

10. The behavior included, inter alia:

    a.    brushing by Plaintiff's breasts

    b.    accosted Plaintiff in front of fellow employees

    c.    accused Plaintiff of "stealing his accounts" after coming up behind Plaintiff and grinding against her chair;

    d.    simulated oral sex through hand gestures and said "maybe you're not doing it right" commenting on why Plaintiff was not married

    e.    criticized Plaintiff for not being married to her child's Father

      f.      staring at Plaintiff as if "undressing her with his eyes";

11. In late January 2003, Plaintiff had a private meeting with her immediate supervisor, Ms. Keeley Elder. At the meeting, Plaintiff informed Ms. Elder that since November 2002 that Nazih Kazzaz, an assistant supervisor, was committing a pattern of subjecting Plaintiff to repeated sexual harassment including unwelcome and offensive comments, gestures and physical contact of a sexual nature.

12. Ms. Edler dismissed the actions by responding, "I'm sure he didn't mean anything". No action was taken by Defendant to remedy the harassment.

13. Plaintiff attempted to avoid Kazzaz's sexual harassment in the future but because of their close proximity in the workplace, this was not possible.

14. Several days after the meeting, Kazazz rubbed his crotch area against Plaintiff. Plaintiff explicitly told him to move back and give her "some space."

15. Over the next few days, Kazazz became increasingly more belligerent towards Plaintiff, presumably because Plaintiff's rebuking of his sexual advances.

16. The situation came to a boiling point on February 4, 2003 when Kazazz verbally accosted Plaintiff in front of several coworkers after coming up behind Plaintiff and pressing against her. At approximately 9:30 pm, Mr. Kazazz accused Plaintiff of stealing payments from him. In addition, Mr. Kazazz brushed against Plaintiff's breast in an intimidating manner.

17. Despite Plaintiff's attempt to take the confrontation off the floor, Kazazz continued to persist in a belligerent tirade.

18. On February 12, 2003, after several days of caring for her sick son, Plaintiff immediately attempted to inform Ms. Elder of Kazazz's behavior.

19. On that same day, Ms. Elder was out sick so Plaintiff informed Chris Dotts, the

department manager of the incident and informed him of Kazzaz's repeated sexual harassment including unwelcome and offensive comments, gestures and physical contact of a sexual nature.

20. Mr. Dotts' sole response was to request Plaintiff call Ms. Elder. Mr. Dotts' subsequently exited the office as Plaintiff called Ms. Elder.

21. Ms. Elder's response over Plaintiff's objections was to relocate Plaintiff to another cycle although still in close proximately to Kazzaz.

22. The relocation forced Plaintiff to lose past clients and start from scratch in building a clientele. It cost Plaintiff her bonus as she was forced to work an inferior cycle.

23. Ms. Elder's response to Plaintiff's objections was that Kazzaz was a top performer and relocating him was not an option.

24. Over the subsequent weeks, Plaintiff on several occasions requested information on how Ms. Elder and Mr. Dotts were handling the situation and she received no response.

25. Subsequently, on March 12, 2003, Plaintiff was called into a meeting where they informed her that she was in violation of company policy for allegedly accessing a celebrity account.

26. Inexplicably, the alleged access to the customer's account occurred on February 13, 2003, a highly temporal proximity. As stated above, the second notice to Mr. Dotts was on February 13, 2003.

27. Defendants provided no basis or proof for this allegation. It is a well-known common practice for Collections Representatives to access and use each other's computers for work related matters.

28. Defendants' actions constitute a retaliatory conduct toward Plaintiff for demanding

4

that they do something about Kazzaz's repeated sexual harassment.

29. Plaintiff wrote a letter to human resources on March 14, 2003 indicating that Kazzaz harassed her through off-color remarks.

30. The Human Relations Department spent more time investigating the alleged wrongdoing by Plaintiff than investigating her charges.

31. In fact, Plaintiff was never contacted, never interviewed, or never asked information concerning the sexual harassment.

32. Witness, Kathy Scott corroborated that Kazzaz made sexual contact with her in a identical sexual manner during their period of employment with Defendant during the Delaware Department of Labor investigation.

33. After being out on work-related leave due to Defendant's actions, Plaintiff returned to work on May 6, 2003 only to be terminated for alleged access incident with no further explanation.

## EEOC PROCEEDINGS

34. On or about June 11, 2003 Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor and the Equal Employment Opportunity Commission ("EEOC") against the J.P. Morgan Chase, Inc.

35. On or about February 3, 2005 the EEOC issued a Notice of Right to Sue Letter.

36. Plaintiff received a copy of the Notice of Right to Sue Letter on or around February 7, 2005.

37. A true and correct copy of the Notice of Right to Sue Letter is attached to the original Complaint as Exhibit A.

## COUNT I – SEX DISCRIMINATION/SEXUAL HARASSMENT

38. Paragraphs 1 through 29 are hereby realleged and incorporated herein by reference as if fully set forth herein.

39. Such acts as described about by Defendant, J.P. Morgan, Inc. constitute unlawful sex discrimination and sexual harassment against Plaintiff in violation of Title VII of the Acts of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII").

40. As a direct and proximate result of Defendant's unlawful discrimination, in the nature of sexual harassment, by and through its agents and employees, Plaintiff, Jennifer Reed has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and lost wages and lost benefits.

## COUNT II- RETALIATION

41. Paragraphs 1 through 32 are hereby realleged and incorporated herein by reference as if fully set forth herein.

42. Such acts as described above by Defendant, J.P. Morgan Chase, Inc., its agents and employees, constitute unlawful retaliation against Plaintiff for having complained of discrimination and sexual harassment.

43. As a direct and proximate result of Defendant's unlawful discrimination, in the nature of sexual harassment, by and through its agents and employees, Plaintiff, Jennifer Reed has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and lost wages and lost benefits.

**WHEREFORE**, Plaintiff, Jennifer Reed demands judgment in her favor against Defendant J.P. Morgan Chase, Inc. for compensatory damages, damages for emotional distress, damages for pain and suffering, lost wages, fringe benefits, front pay, special damages, medical expenses, costs of this action, Attorney's fees, expert fees, pre-judgment interest, post-judgment interest, and any other just and equitable relief as this Court deems proper, including an injunction permanently restraining these violations of Title VII and a directive that Defendant take such affirmative action as are necessary to ensure that the effects of these unlawful employment practices are eliminated.

YOUNG, MALMBERG & HOWARD, P.A.

_____
RONALD G. POLIQUIN, ESQUIRE
Supreme Court I.D.: 4447
30 The Green
Dover, DE 19901
302-672-5600
Attorney for Plaintiff

4/25/05