IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENNIFER A. REED, | : |
| Plaintiff, | : C.A. NO.    05-250 GMS |
| vs. | : |
| J.P. MORGAN CHASE, INC. | : |
| Defendant. | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DAVID L. FINK

Plaintiff seeks to introduce at trial the testimony of Dr. David L. Fink as an expert on Plaintiff's alleged psychiatric injuries. Fink, however, should not be permitted to testify. It is Fink's opinion that although Plaintiff is not presently suffering from any psychiatric illness, she did suffer from a psychiatric disorder at some point in the past. Fink never observed Plaintiff during the time she was allegedly symptomatic, nor did he (or any other physician) have any contemporaneous conversations with her about her alleged disorder and Defendant. Rather than being based on his own personal knowledge or reliable medical records, Fink's report is based almost entirely on Plaintiff's self-serving statements during a single interview with Fink and his belief that these statements were truthful. And when asked at deposition whether Fink could distinguish a patient with a serious history of psychiatric illness from a patient that was merely faking such a history, Fink admitted he could not. Fink's expert report (and his related testimony) is unreliable, irrelevant, and unduly prejudicial – and therefore inadmissible under Federal Rules of Evidence 401, 403, and 702.

I.  **PLAINTIFF'S PROPOSED EXPERT WITNESS TESTIMONY SHOULD BE EXCLUDED.**

Fink's testimony fails to meet the criteria established by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), for the admission of expert testimony. These criteria include whether the expert's theory has been or could theoretically be tested, whether it has been subject to peer review or publication, the known or potential rate of error in the theory when applied, the existence and maintenance of standards and controls, and the general acceptance of the theory in the scientific community. Ultimately, these criteria are meant to ensure that only scientific evidence that is reliable makes its way to the jury. See Daubert, 509 U.S. at 590 (explaining that, "[i]n short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability"); see also Elcock v. Kmart Corp., 233 F.3d 734, 744 (3d Cir. 2000).

A.  **FINK'S REPORT AND PROPOSED TESTIMONY ARE UNRELIABLE, IRRELEVANT, AND UNFAIRLY PREJUDICIAL**

Fink's expert opinion is that while Plaintiff is not currently suffering from any psychiatric disorder, she did suffer from a depressive or panic disorder at some point in the past. Fink Report at 7 (attached as Exhibit A) (concluding that Plaintiff suffered from Major Depressive Disorder and Panic Disorder, but that both disorders are currently "in remission"); id. at 7-8 (describing Plaintiff's speech, mood, affect, thought processes, sleep, appetite, and energy as generally "normal" and "okay"); Fink Dep. at 45-47 (attached as Exhibit B).

Fink's conclusion is unreliable. It is not based on his personal knowledge or medical expertise, because it is undisputed that Fink never had any interaction with Plaintiff during the period of her alleged illness. Fink Dep. at 25, 36, 38-40, 45. Instead, Fink relies on his belief that Plaintiff's statements to him about her past were truthful. Yet Fink admits that he cannot tell

the difference between a person pretending to have had a psychiatric problem in the past and one who actually had a problem – and he states that there is no kind of scientific test that could determine that. Fink Dep. at 82-83.

The only other information Fink has about the Plaintiff's medical condition during the time when she was allegedly suffering from a psychiatric disorder is from the records of Mary High. As an initial matter, Fink's report and testimony were premised on the notion that Mary High was Plaintiff's general physician. Fink Rep. at 9 (explaining that "[Plaintiff] . . . has made a gradual recovery with the help of pharmacotherapeutic agents administered by her general practitioner, Dr. High"). But not only is Mary High not the Plaintiff's usual physician, she is not a physician at all. She is a nurse practitioner, not licensed to practice medicine in any state. See High Dep. at 39-40, 45, 65 (attached as Exhibit C).[1] To the extent Fink's testimony relies on High's experience as Plaintiff's general doctor (which it does at great length), it is unreliable and wrong.

Fink also misinterprets High's records about the Plaintiff. Fink's report was premised in part on the assumption that High treated Plaintiff with Wellbutrin for depression. Fink Report at 4. But that assumption is wrong. High prescribed Wellbutrin not for any psychiatric disorder, but instead at Plaintiff's request to help Plaintiff quit smoking. See High Dep. at 33-34. Further, the notes merely record what the Plaintiff told High, not High's opinion. See High Dep. at 39-40, 45, 65. Fink's account of the Plaintiff's past psychiatric problems therefore relies on his

---

[1] High's methodology was, unsurprisingly, unlike those observed in the medical profession. High, for example, did not apply the standard psychological principles laid out in the Diagnostic and Statistical Manual of Mental Disorders for the diagnosis of mental disorders, see High Dep. at 97-98, as is common in the medical profession (and which Dr. Fink uses).

belief that the Plaintiff made truthful reports to him and High. Yet Fink admits he has no basis for the first, and he has no possible way of knowing the second.

In these circumstances, Fink's testimony is insufficiently reliable as to be admissible. For a theory to be scientific enough to enter the courtroom, Daubert looks to whether the theory has been tested, subjected to peer scrutiny, subjected to controls, and generally accepted. Fink's "theory" has none of these virtues. In fact, Fink has no theory at all. All of Fink's purported conclusions about the Plaintiff's past psychiatric history are traceable directly to the Plaintiff herself. Fink assumes that Plaintiff was truthful. But when pressed, he admits he does not even have a methodology to assist him in making that judgment. He therefore cannot discount the significant possibility that Plaintiff's statements to him were false. In these sorts of cases, when an expert has not "adequately accounted for obvious alternative explanations," In re Unisys Savings Plan Litigation, 173 F.3d 145, 166 n.10 (3d Cir. 1999), their testimony must be held inadmissible. See Claar v. Burlington Northern R.. Co., 29 F.3d 499, 502 (9th Cir. 1994) (excluding testimony where expert cannot "rule out other possible [theories]").

This general rule has often been applied in situations similar to this one. Where physicians have relied on the truthfulness of statements others made to them, the validity of their testimony is necessarily contingent on whether the statements were themselves true. In such cases, their testimony is disallowed. As one Court put it, a physician can "summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations," but such a doctor "cannot pass judgment on the alleged victim's truthfulness in the guise of a medical opinion." United States v. Whitted, 11 F.3d 782, 785-86 (8th Cir. 1993) (holding the admission of such a statement as expert testimony to be plain error); see also United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999) (similarly explaining

4

that if an expert's opinion is "largely based on crediting the [plaintiff's] account, whether disclosed to [the expert] or others," the expert is "merely vouching for the credibility of the alleged victim" and their testimony must be excluded under Rule 702).

B.  **FINK'S REPORT AND TESTIMONY WILL NOT ASSIST THE TRIER AS OF FACT AND THEREFORE ARE INADMISSIBLE**

Fink's report is also inadmissible under Federal Rule of Evidence 702 because it is not a proper basis for expert testimony. It simply will not "assist the trier of fact to understand the evidence or to determine a fact in issue" within the meaning of Rule 702. To the extent Fink's conclusions are based on his medical observations of Plaintiff, his conclusion is only that Plaintiff was not suffering from any psychiatric disorder when he examined her. His conclusion that Plaintiff had suffered in the past from a depressive or panic disorder was not based on those observations, but rather his evaluation of Plaintiff's credibility when describing her past to him. But a jury can evaluate Plaintiff's testimony about her past experience without Fink's assistance. "[A]n expert [should be] precluded from stating an opinion where provision of the background data puts the trier of fact in as good a position as the expert to state a conclusion." 29 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure, § 6264, at 215 n.30 (1997 & Supp. 2006). Courts uniformly embrace this principle, explaining that there is no need for expert testimony "when that testimony ventures into areas in which the jury needs no aid or illumination." United States. v. Gibbs, 190 F.3d 188, 212 (3d Cir. 1999); see also Charley, 189 F.3d at 1267 (rejecting expert testimony); United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991) amended by, 957 F.2d 301 (7th Cir. 1992) (rejecting the expert testimony of an IRS agent on whether the defendant was entitled to disability benefits, because in so doing the agent had to make credibility determinations, and "the jury does not need an expert to tell it whom to believe"); United States v. Felak, 831 F.2d 794, 797-98 (8th Cir. 1987) (rejecting the testimony

of psychiatrist on fact issue regarding whether defendant's earlier refusal to pay taxes was willful, because the jury was fully capable of resolving that question).

## CONCLUSION

Dr. Fink's testimony is unreliable, unhelpful, irrelevant, and unduly prejudicial – and should be excluded.

Respectfully submitted,

_____
Rebecca L. Butcher, Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE  19899

Of Counsel:
M. Frances Ryan, Esquire
Thomas K. Johnson, II, Esquire
Dechert L.L.P.
Cira Centre
2929 Arch Street
Philadelphia, PA  19104
(215) 994-4000

Dated: May 8, 2006                              Attorneys for Defendant