# EXHIBIT A

11/12/2005 10:50

**David L. Fink, M.D.**

General Psychiatry
One Rittenhouse Square, #701
135 South 18th Street
Philadelphia, PA 19103
Phone: (215) 563-4649
Fax: (215) 563-7255

November 18, 2005

VIA FACSIMILE TO 302/674-0549
Ronald G. Poliquin, Esquire
YOUNG, MALMBERG & HOWARD
30 La Greene
Dover, DE 19901

RE: Jennifer Reed vs. J.P. Morgan Chase, Inc.
    05-250 (GMS)

Dear Mr. Poliquin:

At your request, I have conducted a forensic psychiatric evaluation of Jennifer Reed to determine the nature and extent of any psychiatric sequeli which resulted from her experiences with J.P. Morgan Chase, including the alleged actions of sexual harassment, the accusation of professional misconduct, retaliation, and termination. As part of this evaluation I met with Ms. Reed for approximately 4 hours on November 8, 2005. In addition, I reviewed the following materials:

1. The Complaint in Jennifer Reed vs. J.P. Morgan Chase, Inc.
2. Defendants' Answer to Plaintiff's Complaint;
3. Plaintiff's First Set of Interrogatories Directed to Defendant
4. Defendant's First Set of Interrogatories Directed to Plaintiff;
5. Defendant's First Set of Document Requests Directed to Plaintiff;
6. Notice of Deposition;
7. Scheduling Order;
8. Defendant's Rule 226(f) Memorandum;
9. Plaintiff's First Request for Production of Documents;
10. Confidentiality Stipulation;
11. Plaintiff's Objections and Responses to Defendant's Request for Documents;
12. EEOC file;
13. J.P. Morgan Chase employment file;
14. Letter of Jennifer A. Reed to Vicky Rally of November 14, 2003;
15. Unum Provident disability file of Jennifer Reed;
16. Letter of Jennifer Reed to the Delaware Department of Labor dated May 26, 2003;

1

herself ruminating about her situation, feeling that it was "out of control" and that "things were falling apart." She became worried about her financial stability; i.e., how she was going to care for her son, what was going to become of her health insurance. For the first several weeks she was unable to sleep with frequent wakenings and fitful disturbed nights. She had a loss of appetite, decrease in her attention and concentration, and increased irritability. She had periods of feeling outraged and furious both about the lack of response to her concerns and anger about being "set up" and "falsely accused of doing something which she had not done." She was furious that rather than her being heard as someone who was being wronged she was now being accused of wrongdoing herself. She also reports feelings of helplessness, hopelessness and embarrassment. She describes that she found the entire situation with Mr. Kazzaz to be personally embarrassing, that at first she was in disbelief about his behaviors and then she found herself in a bind, feeling very uneasy but not wanting to make her concerns public because they were of such a personal and sexual nature. She was also troubled because she had found the situation to be of such a personal nature that she had not revealed that she was having this difficulty to her fiancé and now she was forced to talk about this matter with him which put a strain on their relationship.

Following the initial shock and anxiety symptoms Ms. Reed reports that she became depressed with a decrease in her energy, a low mood, a persistence of ruminative worries and feelings of hopelessness. She denies suicidal thoughts or self-injurious thoughts. She acknowledges a pervasive feeling of dread and of "things falling apart." The day after her encounter with Mr. Dots and the accusation of inappropriately accessing Madonna's file Ms. Reed saw her family doctor, Dr. High, who diagnosed her with an anxiety reaction and depression due to "work-related stress." At that time she prescribed Xanax .5 mgs for anxiety and Wellbutrin for depression. Dr. High saw her in periodic visits continuing the pharmacotherapeutic treatment for anxiety and depression and ordered stress related medical leave until May 6th.

In her initial note of March 26, 2003, Dr. High identifies a chief complaint of "stress and depression." She states "Anxiety and Depression are increased due to stress at work" and starts Wellbutrin SR 150 BID and Xanax 0.25 mg OD. On April 21, 2003 she notes that "Wellbutrin is causing no sleep and nervous feelings." At this point she stopped the Wellbutrin and started Paxil 12.5 mg OD. On April 18, 2003 the medical record indicates a return to Wellbutrin with persistent symptoms. Ms. Reed is then not seen next until January 12, 2005. It is unclear whether she continued on medication or stopped due to side-effects. At this next visit, "Anxiety and Depression remain the primary problem," and Lexapro 10 mg OD is prescribed and continued at least through March 15, 2005.

During this period of time Ms. Reed states that she made numerous attempts to get an appointment with psychiatrist but was unable to and that subsequently upon her ultimate termination from Chase her health insurance was cancelled. While on Wellbutrin she had side effects including increased agitation and irritability, and she reports starting and then stopping the medications on several occasions in an effort to minimize these side effects.

On May 6th Ms. Reed returned to work and met with Vicky Rally from Human Resources (to whom Ms. Reed had written concerning her difficulties in the work place on March 4, 2003). At that point she was informed that her concerns about the hostile work environment had been resolved. Immediately following that meeting she met with Mr. Dots who proceeded to fire her citing security issues related to Madonna's file.

4

**WORK HISTORY**

Ms. Reed worked in real estate sales prior to moving to Florida in 1990. In Florida she worked in Real Estate Development. Ms. Reed worked for Advanta/Fleet Financial from 10/97 through 5/98. She began working for J.P Morgan Chase in August of 1998 through May of 2003. Her personnel file reveals two written warnings concerning absenteeism. Her work evaluations at Chase indicate a solid performer with evaluations consistently of satisfactory or above and it is noted in her review of August 25, 1999 that she is a "team player."

**EDUCATIONAL HISTORY**

Ms. Reed has two years of Community College at Delaware Technical College from 1980 to 1984 and has taken real estate and licensing sale courses at the Delaware School of Real Estate in 1995.

**PSYCHIATRIC HISTORY**

Ms. Reed has no significant medical problems and is not on any standing medical treatments. She had her first psychiatric contact in 1995 following the break-up of her marriage. She was effectively treated with an SSRI and anti-anxiety medicine. She had another episode of anxiety and depression following her father's death in 2002. She sought psychiatric consultation at that point and responded well to another brief course of pharmacotherapy.

In 2002 she gave birth to her son, Michael. It was an uncomplicated pregnancy and the post partum period was satisfactory without any post partum depression.

**DRUG AND ALCOHOL HISTORY**

Ms. Reed has not had any difficulties with drugs, and she reports herself to be a moderate social drinker.

**LEGAL HISTORY**

In 2001 Ms. Reed was driving with her parents and she was hit by a drunk driver. This accident led to the diagnosis of her father's severe cardiopulmonary disease to which he ultimately succumbed. Of note, despite being struck by a drunk driver Ms. Reed never pursued a lawsuit against this individual. She has never been involved in a lawsuit and has no criminal history. She has never declared bankruptcy.

**MENTAL STATUS EXAM**

Ms. Reed is an attractive, neatly dressed young woman who looked her stated age. She was mildly anxious initially during the interview but became more comfortable as the interview proceeded and answered all questions in a genuine and direct fashion. Her speech was of normal rate, prosedy and tone. Her mood was "okay." Her affect was of normal range. Her thought process was logical and goal directed without looseness of association. She has had no psychotic symptoms past or present. No auditory or visual hallucinations. She reports that her depression is improved over the past 6 months and she at this point has normal sleep and appetite. Her energy has returned to baseline. She denies suicidal ideas, and her anger and irritability have decreased.

Ms. Reed was alert and oriented to person, place and time. Her fund of knowledge for current events was adequate. Her attention and concentration were within normal limits as demonstrated by her ability to spell word forwards and backwards and to serial sevens. Her abstraction was intact.

**DIAGNOSIS**

Axis I        Major Depressive Disorder, Recurrent, in remission, Panic Disorder, in remission

Axis III      None
Axis IV      Sexual harassment in the workplace with retaliation, loss of job with loss of income and health insurance, child with chronic medical illness
Axis V       70

**OPINION**

It is my opinion within a reasonable degree of medical certainty, based upon the facts of th case conveyed to me by Ms. Reed as well as those incorporated in her personnel file, Department of Labor and EEOC documents, that Ms. Jennifer Reed has suffered psychiatric injuries as a result of the events that occurred in the workplace while at J.P. Morgan Chase. Being subjected to unwanted sexual advances, inappropriate comments and repeated sexual touching caused Ms. Reed to become extremely anxious and put her in a difficult bind about whether to endure this degree of discomfort or to report it to her superiors. The difficulties with her situation were compounded when upon making her report she was dismissed by her supervisor being told that, "he probably didn't mean anything by it" and subsequently subject to retaliation by Mr. Kazzaz and other senior administrators at the bank including being accused of stealing Mr. Kazzaz's accounts and inappropriately accessing a celebrity's file. Rather than having her grievance addressed she herself was charged with misbehavior at the workplace and ultimately fired from her job.

As a result of these actions Ms. Reed initially suffered acute anxiety with full-blown panic attacks including physiological symptoms of shortness of breath, palpitations, light headedness and the feeling that she was going to pass out. The initial period of intense anxiety lasted for many weeks and ultimately gave way to a more prolonged depressive syndrome characterized by depressed mood, low energy, changes in her attention and concentration, feelings of helplessness and hopelessness, loss of libido, increased irritability and anger. The symptoms of anxiety and depression are documented by Dr. High's records beginning in March 2003 through March 2005. It is my opinion, within a reasonable degree of medical certainty, that but for the actions of the aforementioned individuals at J.P. Morgan Chase, Ms. Reed would not have suffered these psychiatric events.

Ms. Reed's situation is all the more grievous as she had recovered from two previous episodes of depression following major life events including the discovery of infidelity in her marriage and its subsequent dissolution, and the death of her father. In both these instances, Ms. Reed sought medical/psychiatric treatment and responded well, and returned to baseline within a few months. It is particularly unfortunate that these events at J.P. Morgan Chase occurred while she was enjoying a period of stability in her life including a new marriage, a child and the

8

purchase of a new home. The unwanted advances of Mr. Kazzaz, the failure of an adequate response, and the ultimate loss of her job were experienced as a devastating setback at a time when she was making many positive strides and gains in her life.

Ms. Reed's early childhood adds another degree of vulnerability to her psychiatric picture. She grew up in a volatile, unpredictable household with a critical angry alcoholic father. For her, the achievement of stability and control was of the utmost importance. As a result of her early life financial instability, her ability to be financially stable and independent was of enormous personal significance. The threat of disruption of her job with the sexual harassment in the workplace and her then being blamed for behaviors which she denies resulted in her feeling extraordinarily out of control and reactivated her old childhood feelings of helplessness and ensuing chaos. She felt very much like a victim in an out of control situation where none of her efforts had any import or effect. Following her feelings of anxiety about being out of control she began to feel depressed, despairing, helpless, and hopeless. These experiences returned in the form of a familiar flashback in which her efforts to maintain stability in her childhood home were repeatedly shattered.

As a result of these events, Ms. Reed suffered the clinical symptoms described above. In addition, they placed undue strain on her recent marriage as she was less emotionally available, angry and irritable and suffered a loss of libido. She indicates that there was a period where she feared that in addition to everything else her marriage was being put at risk. In addition, Ms. Reed had a sick child at home who required medical treatment and as a part of her termination she lost medical benefits and was unable to get Cobra. This loss of medical insurance felt like a direct threat to her child. It also, in my opinion, it impeded her ability to get the most proper and effective psychiatric care for herself.

Since the incidents of 2003 through May 6, 2004, Ms. Reed states that she has made a gradual recovery with the help of pharmacotherapeutic agents administered by her general practitioner, Dr. High. She states that her depression and anxiety are diminished but that she worries about her ability to reenter the work force both concerning worries about what she would do if similar circumstances were to occur again, and with an even larger concern that her making a grievance at J.P. Morgan Chase will somehow lead to her having difficulties finding work in her chosen field in the future.

At the present time Ms. Reed would benefit from a psychopharmacology assessment to further evaluate the pharmacotherapy for anxiety and depression, and a period of brief psychotherapy to help her process the post traumatic elements of the situation she has been going through. This would assure that she both was properly medically stabilized and that she is managing the feelings of anxiety, vulnerability and helplessness that have been prominent throughout this experience.

9