# EXHIBIT  B

# COPY OF TRANSCRIPT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF DELAWARE

JENNIFER A. REED,                 CIVIL ACTION
     Plaintiff,              NO. 05-250-GMS

    V

J.P. MORGAN CHASE,
INC.,
    Defendant.

Oral deposition of DAVID L. FINK, M.D., taken at the law offices of Dechert, LLP, The Cira Centre, 2929 Arch Street, Philadelphia, Pennsylvania, on Tuesday, February 7, 2006, commencing at approximately 3:46 p.m. before Joanne Rose, a Registered Professional Reporter and Notary Public, pursuant to notice.



**James DeCrescenzo Reporting, LLC**
INNOVATING LITIGATION
1880 JFK Blvd., 6th Floor • Philadelphia, PA 19103
www.jdreporting.com

215.564.3905
PHONE

215.751.0581
FAX

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

```
 1        Q.     Did you know Ms. Reed in
 2  1995?
 3        A.     No, I did not.
 4        Q.     Did you treat her in 1995?
 5        A.     No, I did not.
 6        Q.     Have you reviewed any
 7  medical records related to that
 8  episode?
 9        A.     No, I have not.
10        Q.     And you said the 1995
11  episode was triggered by her divorce?
12        A.     Correct.  Actually, not by
13  her divorce but by the revelation of
14  infidelity in the marriage and a
15  decision that they were going to
16  split up.
17             So I'm assuming that the
18  divorce took a few years but that was
19  the acute incident, was marital
20  difficulty.
21        Q.     Do you believe that
22  Ms. Reed has suffered from panic
23  attacks?
24        A.     Yes, I do.
```

**JDR**

**James DeCrescenzo Reporting**, LLC

InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                        FAX  215.751.0581

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

```
1    correct.
2         Q.    How many times have you met
3    with Ms. Reed?
4         A.    I met with her on one
5    occasion for four hours on November
6    8, 2005.
7         Q.    I'm sorry.  For four hours;
8    is that correct?
9         A.    Four hours.
10        Q.    And where did you meet with
11   her?
12        A.    In my office.
13        Q.    Was there anyone else
14   present?
15        A.    No, there was not.
16        Q.    Did you take notes of your
17   session with Ms. Reed?
18        A.    Yes, I did.
19        Q.    Where are those notes
20   today?
21        A.    Right here (indicating).
22        Q.    Is the contents of the
23   entire pad related to Ms. Reed?
24   You've handed me a yellow note pad.
```

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

1    case?

2        A.    No, I do not.

3        Q.    Did you tape record your

4    session with Jennifer Reed?

5        A.    No, I did not.

6        Q.    Am I correct that the

7    history that appears in your report

8    is derived primarily from Ms. Reed's

9    interview with you?

10        A.    Primarily.

11        Q.    Can you tell me what else

12    you used when formulating this

13    report?

14        A.    I had a host of other

15    documents, the legal documents, and

16    some correspondences of Ms. Reed to

17    various people at J.P. Morgan Chase.

18    So I reviewed all of those before

19    seeing her and in some fashion there

20    incorporated it in the history.

21        Q.    The documents that you

22    reviewed, are they confined to the

23    ones that are identified as numbers 1

24    through 19 on Pages 1 and 2 of your

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

1    report?

2        A.    Yes.

3        Q.    Can you tell me who

4    provided you with those documents?

5        A.    Mr. Poliquin.

6        Q.    Did you ask for any

7    documents in particular?

8        A.    It's my practice to ask for

9    the complete file before seeing the

10   individual.

11       Q.    Was there anything that you

12   asked for in particular that you were

13   not given?

14       A.    As far as I know, this is

15   the complete file.

16       Q.    Did you ask Ms. Reed for

17   any documents when you met with her?

18       A.    No, I did not.

19       Q.    Did you ask her to provide

20   you with any information after you

21   met with her in November of 2005?

22       A.    No, I did not.

23       Q.    Did you ask Mr. Poliquin

24   for any information after your

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905                InnovatingLitigation                FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

```
1    meeting with Ms. Reed in November of
2    2005?
3         A.   I asked Mr. Poliquin when
4    we were setting up this deposition if
5    there had been any other documents
6    generated that I should review and he
7    said, no, there were not.
8         Q.   Would you take a look at
9    what's identified as number 14 in
10   your report on the list of materials?
11        A.   Yes.
12        Q.   This says, "Letter of
13   Jennifer Reed to Vicky Rally of
14   November 14, 2003." Do you have a
15   copy of that letter?
16        A.   I don't know.  I did at the
17   time, obviously.
18        Q.   Have you retained any of
19   those documents?
20        A.   Yes, I have the documents.
21        Q.   Do you have the documents
22   with you here today?
23        A.   Yes, I do.
24        Q.   Can you please see if you
```

**JDR**

**James DeCrescenzo Reporting**, LLC

215.564.3905     InnovatingLitigation     FAX  215.751.0581
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

1    can locate number 14, the November

2    14, 2003 letter that you refer to?

3         A.    (Witness complies.)  Rally

4    is misspelled.  Let's see.  Is this

5    the -- this is the letter of November

6    14 -- let's see.  What date is this?

7    May 4.

8              And here's a letter to

9    Ms. Rally on April 4.  Here's a

10   letter to Ms. Rally on March 14.  Is

11   that the one we're looking for?

12        Q.    No.    We're looking for the

13   letter dated November 14, 2003.

14        A.    I don't see that date, so

15   it may be that it was the March 14th

16   rather than November 14th and that

17   the date is wrong in the report.

18        Q.    Do you believe that you've

19   ever seen a November 14, 2003 letter?

20        A.    No, because it's not in

21   this packet and this would be the

22   only place it would be.

23        Q.    Okay.  So you believe, in

24   fact, number 14 is an error and that

JDR

James DeCrescenzo Reporting, LLC
InnovatingLitigation
215.564.3905                    1880 JFK Blvd., 6th Floor, Philadelphia, PA19103        FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

```
 1        A.    No.
 2        Q.    So she appeared attractive
 3   and neatly dressed?
 4        A.    Yes.
 5        Q.    And that gave you no cause
 6   for concern?
 7        A.    No.
 8        Q.    Did you find anything
 9   disturbing about the way she
10   interacted with you?
11        A.    No.  She was initially
12   nervous and a little bit jumpy but
13   she settled down over the course of
14   the interview.  And I didn't think
15   that that was unusual for somebody
16   doing a psychiatric evaluation.
17        Q.    And she had just met you?
18        A.    That's correct.
19        Q.    So that seems normal?
20        A.    It seemed normal.
21        Q.    All right.  And she
22   reported to you that she had normal
23   sleep and appetite?
24        A.    At the present time.
```

**JDR**

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                    FAX  215.761.0581

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

1      Q.    And that her energy level

2  was normal for her?

3      A.    At the present time.

4      Q.    Okay.  And her affect was

5  normal in your opinion?

6      A.    Again, mildly anxious but I

7  didn't think that there was a

8  significant disturbance of her affect

9  at that time.

10     Q.    Did she report any suicidal

11 or homicidal ideation?

12     A.    No, she did not.

13     Q.    Did she suffer from any

14 hallucinations that you're aware of?

15     A.    She had no psychotic

16 symptoms.

17     Q.    Do you believe that her

18 memory was intact?

19     A.    Yes.

20     Q.    Did she display any anger

21 or irritability?

22     A.    Only content appropriate

23 anger.

24     Q.    So, again, like when she

47

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

1    met you and she was mildly anxious,

2    there was nothing in her response

3    that was disturbing to you?

4        A.    No.    I thought that her

5    emotions were appropriate.

6        Q.    Do you understand what the

7    cause of Ms. Reed's termination was?

8            MR. POLIQUIN:    Objection.

9    You can answer.

10           THE WITNESS:    My

11   understanding was that she was

12   terminated based on allegations that

13   she had inappropriately accessed a

14   file, breaking one of the Chase rules

15   of practice.

16   BY MR. JOHNSON:

17       Q.    Did she explain to you what

18   those rules were?

19       A.    That people were not

20   supposed to access files that were

21   not part of their case load and that

22   there were certain priority files,

23   like of famous people, that were

24   off -- out of bounds.

82

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

1    longer represents her?

2            MR. POLIQUIN:    Objection.

3            THE WITNESS:    No, I do not.

4    BY MR. JOHNSON:

5        Q.    Did you know that she had

6    another attorney in this matter?

7            MR. POLIQUIN:    Objection.

8            THE WITNESS:    No, I did

9    not.

10           MR. JOHNSON:    Let me see if

11   we can get the notes.

12           (A break was taken from

13   5:17 p.m. to 5:23 p.m.)

14   BY MR. JOHNSON:

15       Q.    Doctor, are you aware of

16   any medical test that would enable

17   you to tell the difference today

18   between someone who has suffered from

19   a depressive episode years ago and

20   someone who today is attempting to

21   put forth a false claim that they, in

22   fact, had suffered from a depressive

23   episode years ago?

24       A.    No.

**JDR**

**James DeCrescenzo Reporting,** LLC

215.564.3905

InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

FAX  215.751.0581

DEPOSITION OF DAVID L. FINK, M.D., 2/7/06

```
 1        Q.    Are you aware of any tests
 2   that would enable you to distinguish
 3   between someone who had suffered from
 4   a panic disorder two or three years
 5   ago and the person who today is
 6   simulating suffering from a panic
 7   disorder two or three years ago?
 8              MR. POLIQUIN:  Objection.
 9   You can answer.
10              THE WITNESS:  There's no
11   specific test.
12   BY MR. JOHNSON:
13        Q.    Is there any kind of test?
14        A.    No.
15        Q.    Do you know if Ms. Reed had
16   any problems with the IRS?
17        A.    No.
18        Q.    Did you ask her if she had
19   any financial stress in her life?
20        A.    I know that she felt
21   financially stressed by the loss of
22   her job but beyond that I did not
23   ask.
24        Q.    Did you ask about possible
```

JDR

**James DeCrescenzo Reporting**, LLC
InnovatingLitigation
1880 JFK Blvd., 6th Floor, Philadelphia, PA 19103
www.JDReporting.com

215.564.3905                                    FAX 215.751.0581