IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JENNIFER A. REED,

    PLAINTIFF,

vs.

J. P. MORGAN CHASE, INC.,

DEFENDANT.

C.A. No.: 05-250 (GMS)

BRIEF IN SUPPORT OF MOTION IN LIMINE OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT

YOUNG, MALMBERG & HOWARD, P.A.

Ronald G. Poliquin, Esquire
30 The Green
Dover, DE 19901
Supreme Court I.D. 4447
302-672-5600
*Attorneys for the Plaintiff*

DATED: May 8, 2006

# TABLE OF CONTENTS

# TABLE OF CONTENTS

PAGE

Table of Citations ....................................................................................................ii

Nature and Stage of Proceedings ..............................................................................1

Summary of Argument .............................................................................................4

Statement of Facts ....................................................................................................5

Argument

I. Chase should be prohibited from arguing a Farragher/Ellerth affirmative defense......10

A. Chase admits that Kazazz was an Assistant Supervisor...............................10

B. Chases admits that they received proper notification of Reed's sexual harassment complaints...........................................................................................11

C. Chase failed to take remedial action upon receiving Reed's complaint................13

D. Chase admits that no investigation was conducted concerning Plaintiff's claims of retaliation...........................................................................................15

E. Chase admits that they violated their own rules and procedures employees concerning Reed's complaints..................................................................15

II. Chase should be prohibited from presenting evidence not previously provided to Plaintiff pertaining to any alleged access to a celebrity account............................16

II. Defendant should be prohibited from arguing or presenting evidence pertaining to Reed's prior work history or subsequent job search...........................................16

IV. Chase should be prohibited from presenting evidence of the Department of Labor's "cause finding"...........................................................................................17

Conclusion ............................................................................................................18

# TABLE OF CITATIONS

Bouton v. BMW of North America, 29 F.3d at 107 (3d Cir. 1994)......................13

Faragher v. City of Boca Raton, 524 U.S. at 777-78..........................................10

Farrell v. Planters Life Save Co., 206 F.3d 271, 278 (3d Cir. 2000)....................10

Knabe v. Bourty, 114 F.3d at 409 n.4 (citing Armburster v. Unisys Corp., 32 F.3d 768, 77 (3d Cir. 1994))..................................................................................13

Knabe v. The Boury Corp. 114 F.3d 407 (1997).................................................13

Kunin v. Sears Roebuck and Co., 175 F.3d 289 (3d Cir. 1999)...........................14

Richards v. City of Wilmington, 2004 U.S. Dist. LEXIS 4987............................11

Swenson v. Potter, 271 F.3d 1184 (9th Cir. 201).................................................13

42 U.S.C. § 2000 et seq. ("Title VII")..........................................................Passim

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed complaint on April 25, 2005. This is Plaintiff's pretrial brief in support of their motion in limine or in the alternative motion for partial summary judgment.

## SUMMARY OF ARGUMENT

I. Chase should be prohibited from arguing a Farragher/Ellerth affirmative defense

A. Chase admits that Kazazz was an Assistant Supervisor

B. Chases admits that they received proper notification of Reed's sexual harassment complaints

C. Chase failed to take remedial action upon receiving Reed's complaint

D. Chase admits that no investigation was conducted concerning Plaintiff's claims of retaliation

E. Chase admits that they violated their own rules and procedures employees concerning Reed's complaints

II. Chase should be prohibited from presenting evidence not previously provided to Plaintiff pertaining to any alleged access to a celebrity account

II. Defendant should be prohibited from arguing or presenting evidence pertaining to Reed's prior work history or subsequent job search

IV. Chase should be prohibited from presenting evidence of the Department of Labor's "cause finding"

## STATEMENT OF FACTS

On April 25, 2005, Jennifer Reed ("Reed") filed this employment discrimination lawsuit against her former employer, J.P. Morgan Chase, Inc., now Chase Bank, Inc. ("Chase"), under Title VII of the Acts of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII").

**"Strengths- Effective Skip Tracer, Organizational Skills, and Team Player"**[1]

Reed started to work with Chase in August 1998, and had a position in the collections department making roundly $40,000 per year with an annual benefits package valued at $12,061 by her employer (Minnehan Report). Since her employment with J.P. Morgan Chase, Plaintiff earned awards, raises, and consistently received relatively positive reviews. She was known in her department as an especially good "skip-tracer"(Scott at 16/10-11). Prior to her employment at J.P. Morgan Chase, Plaintiff was employed locally as a collector at various other companies Reed Dep at 13-14.

In November 2002, Jennifer Reed's team leader i.e. assistant supervisor leader in Nazih Kazazz began committing a pattern of subjecting Reed to repeated sexual harassment including unwelcome and offensive comments, gestures and physical contact of a sexual nature (Plaintiff's Complaint). The comments ranged from ridiculing Plaintiff for being a single mother to purposely brushing up against Plaintiff's breasts. Another female employee within Plaintiff's bucket confirmed that Kazazz treated women differently than men. Scott Dep. at 32/ 13-16. She also felt he rode women harder than men. Scott Dep. at 15-23.

---

[1] Reed performance evaluation, 12/11/96.

### Team Leader "emulated" duties of Supervisor[2]

A team leader was an assistant supervisor (Dotts at 65, 3-5). The Team Leader was left in charge when the supervisor was absent and made sure everyone was doing his or her job. Dotts at 65, 3-10. The team leader "emulated" the duties of the supervisor Dotts at 65/8-10. The collectors viewed Kazazz as an assistant supervisor Scott Dep. at 16-19. Specifically when the supervisor Keeley Elder was not around, collectors answered to. Kazazz. Scott Dep. at 14-17. Kazazz reported to the supervisor to make sure everything was all right and could discipline a collector. Scott Dep. at 1-24.

### "Nazih, Just Being Nazih"[3]

In late January 2003, Plaintiff had a private meeting with her immediate supervisor, Ms. Keeley Elder. At the meeting, Plaintiff informed Ms. Elder that since November 2002, Kazzaz was repeatedly harassing Plaintiff including unwelcome and offensive comments, gestures and physical contact of a sexual nature often cluding to Plaintiff's status as a single mother. Ms. Edler dismissed the actions by responding, "I'm sure he didn't mean anything".[4] No action was taken by Elder to remedy the harassment. The behavior included the following actions:

    a.    brushing by Plaintiff's breasts

    b.    accosted Plaintiff in front of fellow employees

    c.    accused Plaintiff of "stealing his accounts" after coming up behind Plaintiff and grinding against her chair;

    d.    simulated oral sex through hand gestures and said "maybe you're not doing it right" commenting on why Plaintiff was not married

---

[2] Dotts Dep. at 23/12.
[3] Scott Dep. At 89, 11-24

      e.      criticized Plaintiff for not being married to her child's Father staring at Plaintiff as if "undressing her with his eyes";

Several days after the meeting, Kazazz rubbed his crotch area against Plaintiff. Reed explicitly told him to move back and give her "some space."[5]

**"I'm sure he didn't mean anything by it."[6]**

The situation came to a boiling point on February 4, 2003 at 9:30 pm when Kazazz verbally accosted Plaintiff for "stealing her accounts" in front of several coworkers. During the confrontation Kazazz came up behind Plaintiff and pressed against her. In addition, Mr. Kazazz brushed against Plaintiff's breasts in an intimidating manner. Despite Plaintiff's attempt to take the confrontation off the floor, Kazazz continued to persist in a belligerent tirade. After the confrontation, Plaintiff was out several days to care for her sick son. Plaintiff returned on February 13, 2003 and immediately attempted to inform Ms. Elder of Kazazz's behavior. However, Elder was absent so Plaintiff informed Department Manager Christopher Dotts of the confrontation.

Mr. Dotts' sole response was having Plaintiff call Elder on her cell phone in his office. Mr. Dotts' exited the office during the phone call. Elder's solution to the complaint was relocating Reed to a different work cycle. Plaintiff was forced to start anew and probably lost money because of the move. Ms. Elder's responded to Plaintiff's objections to her moving by stating, "Kazzaz was a top performer and relocating him was not an option."

---

[5] Plaintiff Complaint ¶14.
[6] Scott Dep. at 88/7.

> **"Did any employee ever talk to you concerning an investigation concerning Jennifer Reed? A. No."[7]**

After Plaintiff's verbal complaints to Dotts and Elder, she was called into a meeting on March 12, 2003 where Dotts informed her that she was under investigation for allegedly accessing a celebrity account. The alleged access took place on February 13, 2003- the very same date she complained to Dotts and Elder for a second time.

On March 13, 2003, Plaintiff went out on medical leave due to the stress caused by Kazazz, Defendant's response, and the accusation she purposely accessed a celebrity account. Nurse Practitioner Mary High diagnosed Plaintiff with situational anxiety/depression (Employment related) on March 1, 2003. It was Ms. High's opinion that Plaintiff did experience situational anxiety/depression during her employment at Chase Bank. Specifically, her notes state that Plaintiff complained about harassment at work.

On March 14, 2003 Plaintiff informed Human Resources in writing of the ongoing harassment and hostile work environment along with her fear that she was being retaliated against for complaining about Kazazz who was a team leader and top performer in the collections department. Her letter was never responded to. On April 4, 2003 Plaintiff wrote another letter to Human Resources stating she has not received a response as to her complaints against Nazih Kazazz in her March 14, 2003 letter. Again, the Human Resources Department never responded to Plaintiff's second inquiry into her complaint against Kazazz.

---

[7] Kazazz Dep. at 97/18-23.

The only correspondence from Defendant was a letter from Department Manager Dotts demanding that Plaintiff come into work or be terminated. At the time of the letter, Dotts was aware that Plaintiff would be terminated upon her return.

To date, Human Resources has not conducted an proper investigation into Reed's sexual harassment complaints against Kazazz. The harasser Kazazz has never been interviewed by any employee at Chase concerning this complaint and first learned of the complaint prior to his deposition.

Kathy Scott, an employee at J.P. Morgan Chase at the time of this harassment was never interviewed by any of Defendant's employees concerning any complaints against Kazazz.

Plaintiff was never interviewed nor informed of any investigation concerning her complaints concerning sexual harassment or retaliation. Upon returning from medical leave on May 6, 2003 she was terminated under the pretext that she accessed a celebrity account.

Plaintiff was employed to Defendant for approximately seven years prior to this incident. Previously, Plaintiff had no serious disciplinary record with the company. Other employees knowing the Plaintiff found it hard to believe Ms. Reed would access a celebrity account. Kazazz was in close proximity within Reed's computer at the time of incident. Other collectors within her bucket and formerly employed with Defendant stated it was not unusual that a collector would stay logged on to his or her computer during a bathroom or smoke break. It was also testified that employees especially team leaders and other supervisors would perform work on an account while another collector was logged on and absent.

## **ARGUMENT**

I. Chase should be prohibited from arguing a Farragher/Ellerth affirmative defense

The court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Farrell v. Planters Life Save Co.*, 206 F.3d 271, 278 (3d Cir. 2000). The moving party bears the burden of proving that no genuine issue of material fact exists. *Richards v. City of Wilmington*, 2004 U.S. Dist. LEXIS 4987.

In deciding a motion for summary judgment, "a court must view the facts in the light favorable to the non-moving party and draw all inferences in that party's favor." *Knabe v. Bourty*, 114 F.3d at 409 n.4 (citing *Armburster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

A. Chase admits that Kazazz was an Assistant Supervisor

An employer will be subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor whith immediate authority over the employee. *Faragher v. City of Boca Raton*, 524 U.S. at 777-78.

A team leader was an assistant supervisor Dotts at 65, 3-5. A Team Leader was left in charge when the supervisor was absent and made sure everyone was doing his or her job. The Team Leader "emulated" the duties of the supervisor. Dotts at 65/8-10. Other collectors viewed Kazazz as an assistant supervisor. Scott at Dep. 16-19. A team leader would also help collectors log on to their computers. Scott at Dep 19-23. Specifically in this bucket when the supervisor Elder was not around, collectors answered

to Mr. Kazazz. Kazazz reported to the supervisor to make sure everything was all right. Scott Dep. at 14-17.

B. Chase admits they received proper notice of Reed's sexual harassment complaints

Liability exists when the defendant (employer) knew or should known of the harassment and failed to take prompt remedial action. *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289 (3d Cir. 1999). Under *Kunin*, an employer would have constructive notice in two situations: 1) where an employee provides a supervisor with enough information to raise the probability of sexual harassment in the minds of a reasonable employer or 2) where harassment is so pervasive and open that a reasonable employer would have had to be aware of it. See *id*. at 294. In *Kuhn*, the court decided that mere evidence of the employee asking whether "cursing was allowed on the sales floor," she provided her employer with notice of sexual harassment. The other evidence was that the employee's supervisor heard rumors of offensive language in his department but never investigated them. *Id*.

Here, Chase admits that Jennifer Reed complained about Kazazz's abusive and hostile behavior as of February 2003. Reed provided Chase with notice of Kazazz's harassment based on her gender on several occasions both verbally and through letters. Elder's own notes reference "abusive/hostile threatening behavior" pertaining to Kazazz (Elder notes, 2/04). This is in direct contrast with Defendant's earlier representation to the Department of Labor that she only complained that she wanted to be removed from Kazazz's cycle because he was a strong collector and would "collect all the money" (Chase letter to DOL-page 2, ¶1, 5/29/03). In addition, Plaintiff had previously verbally

complained of Kazazz's sexual harassment and behavior in January 2003. Elder's response then was "I'm sure he didn't mean anything by it."[8]

Chase's human resources generalist Vickey Rowley admitted to being on notice that Reed lodged a sexual harassment complaint against Kazazz and was charge of handling that complaint. Rowley Dep. at 10/8-12. Rowley also admitted that a complaint of a hostile work environment falls under the company's definition of sexual harassment. Rowley Dep. at 35/3-7. Rowley also admitted to "remember clearly receiving the letter" on March 14, 2003. Rowley Dep. at 37/4-7. The letter states specifically, "Nazih had continuously made off-color remarks about me being a single mother and having to take time off when my son was ill." 3/14/03 letter from Jennifer Reed to Rowley. Rowley also testified that that Reed's first reporting of the complaint to her supervisor was proper under Chase's procedures. Rowley Dep. at 42/4-6 and 43/ 1-3. In addition, Rowley confirms that Reed complained about Kazazz to both Dotts and Elder in February. Rowley Dep. at 57/22-24.

Rowley also admits that Elder was notified of the contents in the complaint as of February 2003. Rowley Dep. at 43/13-23. Rowley's sole response in response to the letter was to speak with Reed's supervisor Keele Elder and possibly Christopher Dotts. Rowley at 46-47/19-24, 1-5. In addition, Reed left several voice mails and wrote a follow-up letter on April 4, 2003 received by Rowley. In the letter, Reed stated she was shocked and upset she had not received any type of response concerning the March 14 letter. In addition, Rowley understood that Reed complained that Kazazz retaliated against her by

---

[8] Reed's claim is bolstered by another employee's testimony that she heard Elder have the same response referencing Kazazz not acting properly and offending others. Scott Dep. At 89, 11-24.

accessing Madonna's account and conceded no investigation was conducted. Rowley Dep. at 67/7-11.

B. Chase failed to take remedial action upon receiving Reed's Complaint

An employer has a duty to investigate a complaint of sexual harassment. Upon notice of a complaint, a employer has a duty to take prompt corrective action that is 'reasonably calculated to end the harassment." *Swenson v. Potter*, 271 F.3d 1184 (9th Cir. 201). Failure to take such action exposes a employer to liability. *Bouton v. BMW of North America*, 29 F.3d at 107 (3d Cir. 1994). The response must be both prompt and adequate and "reasonably calculated to prevent further harassment." *Knabe v. The Boury Corp.* 114 F.3d 407 (1997).

Here, Chase's sole investigation was through Reed's manager Keele Elder meeting with Nazih Kazazz, Ray Bernard, and Lee Everett (Elder notes, 2/4). In addition, there is some question as to whether any of these individuals were ever spoken to concerning Reed's complaint. Kazazz stated unequivocally that he was never informed or interviewed by Elder about any complaints from Reed. Kazazz Dep. at 94/16-24, 95/2-24, 96/1-24. In addition, Kathy Scott also testified that she was never interviewed by Keele Elder concerning any complaints against Kazazz. Scott Dep. at 43/19-23. Assuming Elder did interview these individuals (which she has never testified to or provided an sworn affidavit), her response was inadequate and did not remedy any possible future harassment. Elder refused to relocate Kazazz and gave Reed a choice to realign to a different inferior work cycle which reduced the number of collections she received and financially hurt Reed. Reed Dep. at 43/1-24.[9]

---

[9] Employee Kathy Scott confirmed that being placed on a different cycle could effect one's income. Dep at 84/1-24.

Chase failed to take prompt remedial action upon receiving Reed's complaint. Elder did nothing when first receiving Reed's complaint about Kazazz in January and then subsequently on February 4, Kazazz verbally confronted Reed in front of several coworkers after he sexually rubbed against her breasts. Reed complained again around February 12 about the incident. As a direct result of Chase's inaction, Kazazz harassed Reed again.

On February 13, just one day after Reed complained about Kazazz.'s sexual harassment - she was accused of accessing a celebrity account. Despite the highly temporal proximity between the complaint and the access to the account, no response was ever given to Reed concerning her complaints of sexual harassment. Kazazz was working in close proximity to Reed on February 13.

Reed properly complained about Kazazz's behavior as of January 2003. Elder's own notes confirm that she was notified as to his abusive and hostile behavior as of February 4, 2005. Reed's third complaint was on February 14, 2003. She also notified Human Resources in writing on March 14, 2003 and followed up on April 4, 2003. Yet Elder's sole remedy was to move Reed from her profitable cycle to a less profitable cycle because Kazzaz was a top performer and moving him was unacceptable. Reed dep. at 43/8-11. Chase's department manager at the time of the incident stated unequivocally that it is not appropriate for a manager to switch an employee whom complained about sexual harassment to a different cycle. Dott Dep. at 100/10-14.

C. Chase admits that no investigation was conducted pertaining to Reed's claim of retaliation bars

Chase did not conduct an investigation into Reed's claim of retaliation. An employer has a legal duty to promptly and thoroughly investigate any complaint

perceived as discrimination, harassment, or retaliation. Without such investigation, an employer may not assert a "Farragher/Ellerth affirmative defense".

Here, Reed promptly complained of retaliation at her meeting with Christopher Dotts on March 12 after learning she was accused of accessing a celebrity account. Chase still has never investigated this claim. In addition, Reed's March 14 letter, she asks Human Resources specifically, "Is this even being investigated, or am I being targeted for bringing charges against a top performer." Reed 3/14/03 letter to Rowley. Despite being the Department Manager, Christopher Dotts did not know what "retaliation in the employment context" meant. Dotts Dep at 96/1-14. Dotts also testified that Rowley and himself came to the conclusion that her retaliation claim was not legitimate. Dotts Dep. at 108/17-18. Rowley would admit that there was no investigation into Reed's retaliation claim. Rowley Dep. at 7-12.

D. Chase admits that they violated their own rules and procedures on sexual harassment investigations

It is undisputed that Chase has an extensive policy on "Harassment". JP Morgan Chase Policy as of 7/28/03. Chase's policy states that "Every effort will be made to conduct a prompt and thorough investigation of any complaint." It also states that all complaints shall be handed under the direction of the Corporate Employee Relations department and "Managers should never conduct an investigation." Chase also has an extensive "Protection Against Retaliation" policy and that such complaints will be investigated promptly.

Here, Reed's manager Keele Edler conducted the investigated in direct violation of their policy. In addition, Elder under the direction of Rowley conducted the entire

investigation rather than the Corporate Employee Relations. In fact, Rowley did not report the complaint or investigation to Corporate Employee Relations. Rowley Dep. at 50/1-2. More importantly, Elder's investigation was a violation of Chase's own policy that "Manager should never attempt to conduct an investigation."

In addition, Rowley never conducted an investigation in Reed's retaliation's claim.[10]

II. Defendant should be prohibited from presenting evidence not previously provided pertaining to Plaintiff's alleged access to a celebrity account

Defendant should be prohibited from presenting evidence not previously requested by counsel pertaining to Plaintiff's alleged access to a celebrity account as they would be prejudicial and allowing them at trial would constitute unfair surprise.

Here Chase has consistently stated that Reed was terminated for accessing a celebrity account. In Plaintiff's request for production of documents, plaintiff requested any photographs, video, or other type of surveillance that would prove that Plaintiff accessed celebrity account. Yet, Chase has provided nothing other than a suspicious OPID footprints statement Def.'s Response to Production of Documents # 21. As this request dealt with sophisticated technology, it would be unfair for Chase to produce new evidence or testimony concerning Plaintiff's alleged access.

As Chase has not supplemented discovery, the trial court should exclude any additional evidence or testimony of Plaintiff's alleged access unless Chase can prove good cause for failing to supplement the record.

---

[10] Rowley had no special training to conduct investigation into harassment complaints. Rowley Dep. at 24/17-20.

II. Defendant should be prohibited from arguing or presenting evidence pertaining to Plaintiff's prior work history and subsequent job search

Pursuant to Rule 403, 412(2), the Court should exclude evidence pertaining to Plaintiff's unrelated performance problems at other employers or problems with subsequent job search.

Any evidence of past performance problems at other Employers for Reed should be excluded as they are unfairly prejudicial and of limited probative value. Second, the evidence would be unduly confusing. Third, the presentation of such evidence would result in an undue consumption of time and require a trial within a trial.

III. Defendant should be prohibited from presenting evidence of the Department of Labor "no cause" finding.

Pursuant to Rule 403, 412(2), the Court should exclude evidence of the Delaware Department of Labor's "no cause finding". Any evidence of the decision should be excluded as they are unfairly prejudicial and of limited probative value. Second, the evidence would be unduly confusing. In addition, the DOL's decision was based on hearsay and other inadmissible evidence and was based on the erroneous conclusion that Reed never said specifically "sexual harassment" in her March 14 letter. During Rowley's deposition, she testified that "hostile work environment" was an umbrella term for sexual harassment.

## CONCLUSION

For the above mentioned reasons, the Court should grant Plaintiff's Motion in Limine or in the alternative Motion for Partial Summary Judgment

**Young, Malmberg & Howard, P.A.**

/s/ Ronald G. Poliquin
Ronald G. Poliquin
I.D. No. 4447
30 The Green
Dover, DE 19901
*Attorney for Plaintiff*